Hey, Police Court. Henry Licke on behalf of the defendants, the appellants in this case. This is a police brutality case. The Plaintiff, Kelvin Fletcher, in the district court sued four St. Louis police officers for using excessive force against him during an arrest back in March of 2013. The jury returned verdicts against two of those officers and awarded Mr. Fletcher actual and punitive damages totaling $600,000. On this appeal, we raise three questions. The first question is, did the district court err in allowing the Plaintiff to read into evidence the deposition opinions of a retained expert, Dr. Arnold Burns, without producing Dr. Burns for cross-examination at trial? The second question that we ask is, did the district court err in submitting Plaintiff's claim for punitive damages against Officer John Moten, even though Plaintiff was unable to identify Officer Moten as one of the officers who used excessive force or caused any injury? And third, we ask, did the court err in neglecting to deduct from its judgment the amounts that the Plaintiff had received in settlement with other defendants that he settled with just prior to trial? First issue, the unavailable expert. Is it appropriate to allow a Plaintiff to read his expert's deposition testimony into evidence without producing that expert for cross-examination? And I think as a sub-issue to that, is there a distinction between an expert witness and a fact witness or a lay witness? He was subject to cross-examination, wasn't he? He was, his deposition was taken. He was not subject to cross-examination at trial because But in the deposition, it was. He was produced as an expert witness for a co-defendant. I know, but he was subject to cross-examination. Yes, Your Honor. He was examined at that deposition. That's right. Now, to that point, I would like to point out a distinction between cross-examination at a deposition and cross-examination at trial, even if it were to take place in court or outside of court, video feed or audio feed. And that is, there is a discovery deposition and that is the cross-examination that Your Honor refers to. I think there is a distinction to be made where after you take a deposition, you then have questions to, at trial, cross-examine them. At your deposition, you said this, but we now find this to be the case. So that's why you can't really predict what questions you might have had because that would have, that would simply, those matters would be developed at trial. That would be developed at trial. That's exactly correct, Your Honor. And I do agree with you that the term cross-examination, yes, that opportunity was given, but I see your point. At trial. Thank you. Was there anything presented to the district court in the nature of a proffer of the things that would have been inquired into had the witness been produced at trial? No, Your Honor. We did not produce that other than to suggest that we would have pointed out, or what we did argue was that the jury didn't have any opportunity to assess the live testimony of the witness. But in terms of, I think, more specific to your question, did we identify, you know, we would have impeached him on this point, and we would have impeached him had it been produced. No, Your Honor. Didn't you have notice before trial that portions of this deposition might be offered in evidence? No, Your Honor. Well, I apologize. We did have on, the trial started on August 8th. It was scheduled to begin on August 8th. On August 4th, we received a letter. I thought there was, you had notice earlier that there was. The notice, I'm sorry. Go ahead. The notice that we had was that this witness had been identified by the plaintiff as one of, and experts, whose testimony they would use at trial. Might use. Might, may be called, yes. Yes. It was a may call identification. So that same witness was identified as a person whose deposition might be, excerpts of deposition might be offered at trial. Isn't that right? Both of those possibilities were raised. I believe so. I don't specifically recall the second, but if that's what you recall from the record, I'm not going to dispute it. And I do want to point out one thing in my initial brief, as opposing counsel pointed out, they did identify this as one of, as one of their experts. It had initially been identified as a co-defendant's expert. After they took his deposition, defense, I'm sorry. Plaintiff's counsel then designated this Dr. Burns as one of their witnesses. And I think I misstated that in my original, in my original brief. But I think it comes down to whether or not this court is going to say that a retained expert, the preference should be live testimony. And in order to demonstrate the unavailability of a retained expert, you have to do more than four days before trial, send a letter saying, I'm too busy. I can't come. There, there, there, there has to be an opportunity, I think, to make other arrangements. And as Judge Friendly pointed out in the second circuit opinion that I mentioned in my brief, there's also, I think, a distinction to be made between lay fact witnesses and, and the expert witness. And the expert witness, in this case, a nephrologist, a liver expert, I'm sorry, kidney expert. He never examined the plaintiff, this particular expert. There are nephrologists in the city of St. Louis that can provide the same, review the records, provide the same analysis and testimony. So that's different, I think, in proving or showing unavailability. The court did give you the opportunity to present your counter depo. Yes, Your Honor. Yes. Testimony. We were allowed to read, to designate our own portions of that, of that deposition. And those were read to the jury as well as the portions designated by the plaintiff in the case. When did you formally object to the use of the deposition rather than the live testimony? Are you asserting it was timely? We received, we received notice August 4th, 2016. Dear Mr. Tatlow, that's plaintiff's counsel, you took my deposition January and I'm now notifying you that I'm too busy because I'm in Chicago practicing medicine. We received this letter on that date, August 4th, 2016. And 15 minutes after receiving that, we immediately objected to the reading of that deposition at trial without producing this retained expert for cross-examination. Now, again, I, I, I want. But you'd had his report for, by that time, over a year. We did have his report. We had his, we had his deposition testimony. Uh, but we did not know that he was not going to be at trial until August 4th. And that is what we object to. We object to the inability or the deprivation of the opportunity to, uh, cross-examination this, cross-examine this witness in, live in front of a jury. Uh, and, uh, we submit that, uh, the, the expert, retained expert, uh, it's, it's a different situation than a fact witness who is unavailable. Uh, they didn't have to have this. What's your best case on that? Because you, you seem to be arguing for us to adopt the legal principle. Yeah, I. What's, what's your authority for it? The, the authority, Your Honor, I think, uh, the analysis that Judge Friendly presents in the Carter-Wallace decision, uh, is the analysis that I think should be applied. Uh, we also cite to rule 43A, which specific rules of civil procedure that state that the preference is for live testimony. And, uh, that would be, that would be in any case, but, but why for the, the expert? Why, why is that greater for this kind of, and I would say to, to Judge Friendly's and here's, uh, here's what Judge Friendly says in, in, in his opinion. The expert witness is different. The expert witness generally has no knowledge of the facts of the case. Check. This witness had no knowledge of the facts of the case. Instead, the expert witness is called upon to express a professional opinion about the facts there that are given to him. That's what happened in this case. Thus, even though one expert, one particular expert is unavailable, unlike a regular fact witness, there is no need to use the expert's deposition testimony because there are, in that instance, other experts who can be available to give their testimony live at trial. That's why we think that there is a distinction and we submit, uh, that as the analysis that should be applied. Now, here's the caveat there, uh, Judge Friendly in the Carter-Wallace opinion, uh, nevertheless allowed the deposition testimony, but it did so because this particular expert in that case had unique knowledge and had just written an article directly on, uh, there was a patent case, uh, directly on, uh, on the money. There was no other expert, but I think the analysis applies in this case because there are other nephrologists, there are other kidney specialists that could examine just as Dr. Burns did the records and provide the testimony live. And to be deprived of the opportunity to cross-examine this witness live in front of a jury, which is, as I indicated... Did that case involve the expert's testimony in the same case or in a different case? Um, I believe it was in a different, it may have been in a, in a different case. In, in the Carter-Wallace decision, that's what you're asking. I believe it was in, in a, in a different case. Uh, the, um, we've, we've gone over the facts. I want to, um, uh, briefly mention the, uh, the two other issues that, that I have and then reserve my time for, for rebuttal. Uh, the two other issues is one, uh, submitting the claim of punitive damages against Officer John Moten. Uh, in the initial complaint, uh, plaintiff, uh, wrote, uh, pled that he was attacked by white officers. Uh, in his First Amendment complaint, he said that he was attacked by four white officers. In his Second Amendment complaint, four white officers. Uh, and then in trial, he was attacked by white officers and a lady cop. Uh, I asked him, can you identify who at trial with John Moten sitting right in front of him? Can you identify, uh, the officers that attacked you? He pointed to one, Nick Martirano. John Moten was sitting right next to him. John Moten is African-American. The witness, uh, the plaintiff never identified John Moten as having, uh, attacked him or used excessive force. And we submit for that reason, it was error to submit a claim of punitive damages. Wasn't there testimony that he was involved in the attack? Uh, there, there was, there was some testimony, I think, through, uh, uh, in, in, in his direct examination. Weren't these officers? Yes, there was. He was unable to identify him though, as one of the, uh, attacking officers and certainly did not identify him. Had Moten himself acknowledged that he'd used a baton in the incident? He used the baton. Yes, Your Honor. He used the baton on his legs. He struck him twice in the legs. That's the only evidence. And if you look at the expert testimony, all the damages took place to the head and the upper body. Uh, there was no evidence that officer John Moten, uh, struck or injured, uh, uh, the plaintiff, uh, that caused any injury. And then finally, my third point, uh, is that the court erred in failing to deduct, uh, the, uh, uh, amounts that had been received from other defendants, namely Corizon and, um, uh, I forget now, the count, the county where he was, uh, the plaintiff was, uh, incarcerated. Weren't these injuries several below the, uh, claim against the hospital had to do with injuries that said they... They said they exasperated, their failure exacerbated... Sorry. They said that the injuries exacerbated the injuries that caused by the officers. Under Missouri law, since those, those people would not be joint tortfeasors, would they? Um... So there wouldn't be a... A set off? Yeah. Uh, I, I submit, Your Honor, that, that, that's incorrect. The, the, the injuries were indistinct. Uh, the, the injuries that, that the settlement went to pay for were the same injuries for which plaintiff sought to collect from... I'm sorry? How do we know that, that, that the, that the injuries were indistinct? How do we tell? Where do we go to find that, the answer to that? Well, I think you can look at, I, I think it was, uh, Dr. Arkin's, uh, testimony, uh, that drew no distinction. And I think you need to find evidence. Was there a distinction in, in the evidence? And there wasn't. I see. Okay, thank you. All right. Mr. Tatlow? Thank you, Your Honor. May it please the Court? Mr., Mr. Lipke, I think the issues are a little simpler than laid out in the briefs, Your Honors. They're very lengthy and I apologize for that. We propounded a second set of facts to try to set the record straight because some of the procedural issues weren't stated correctly. And I think the brief sets that out. But if I could go through that for you briefly, I think Judge White used a sound discretion and was proper in ruling under Rule 32 of the Federal Rules of Civil Procedure that this deposition was admissible. And as the Court is aware, this deposition was taken in January of 2016. It was an August trial. I'm the one that noticed it up. But Corizon and the attorneys for Corizon are the ones that retain the expert. We both had that report almost a year before trial saying what the doctor's opinions were. And the opinions were that the kidney failure and the near death was caused from an assault or traumatic event. And that was no surprise to anyone. I took the deposition by consent. And Ms. Haywood from Mr. Lipke's office traveled there. I paid for the entire thing. And she, in fact, did a 60-page cross-examination, three more pages on recross, and asked virtually everything you could imagine trying to shake him. And they had his CV, his credentials. No one questioned his credentials. I even said I wasn't going to quarrel with his credentials and felt that he was a good expert. Well, after that, it's clear that there is a designation of him as our expert. I actually did it the day before, not knowing what he was going to say in the deposition so that this argument wouldn't be raised later. I disclosed him as an expert that we may call at trial. And then that's, in fact, what I had possibly intended to do when I complied with Judge White's pretrial order. It said to disclose will call witnesses and may call witnesses. And I listed Dr. Burns as a may call witness. But then, as Judge Arnold pointed out, I also designated all the portions of his depositions that I intended to read. But in addition to that, I filed an exhibit list that Judge White ordered us to do. And I listed Dr. Burns' entire deposition as an exhibit I intended to introduce with all exhibits. When was that exhibit list filed? That was 20 days before trial. And that was what the order required. The order didn't require us to call and tell each other who we're calling at trial. It said list who you will call and who you may call. And that's exactly what I did. And then the order also said any party that objects to a portion of the deposition may either object to it by filing a motion in limine or make objections to questions or cross-designate portions of the deposition. And the appellant did nothing. They were silent on that and didn't object. They didn't consent. They didn't cross-designate that. So when this issue came up, I had talked to the opposing counsel about our order of trial. And I think we sent an email saying he wouldn't be coming live. I'd be using the deposition. And that's when they objected. And they waited to file something until 3.37 p.m., the last day before trial on a Friday when our staff was gone. And I scrambled around all weekend. I got a letter from that doctor. I gave it to Mr. Lipke. I did a motion in opposition that I typed myself and got it filed on Sunday because I found it a very important issue. And we took it up immediately the next day with Judge White. And we went through this. And we went through every argument. And we told him, Judge, we believe Federal Rule of Civil Procedure 32 applies. And there's a 32 exception that says if a deponent is 100 miles away or more from the courthouse, they're unavailable. And the deposition may be used for any purpose as long as the party had notice of it or they were there and attended it, both of which were true. On to the argument that an expert's different. Well, I think theoretically, Judge Friendly in 1972 or 1973 did say that. But the Eighth Circuit has not adopted that as precedent. And six circuits around the country joined the Eighth Circuit in saying all witnesses are treated the same under Rule 32. In Rule 804 that they're relying on, they treat the witnesses the same. But 804 has a little bit higher standard. There's nothing in the rules or the comments on the Rules of Evidence or Federal Rule of Civil Procedure 32 or any Eighth Circuit precedent treating experts and lay witnesses differently. So that would be a departure from our jurisprudence for the past hundred or more years if the court were to read that into it. So I don't think that would be proper, Your Honor. Did the district court take any view on the timeliness of the defendant's objection to the deposition testimony? I actually pointed out that they hadn't objected to it in their pre-trial, but Judge White wanted to take it up anyway. And so we took it up. And he did not say, well, he didn't say you've waived it. I did argue I thought they'd waived it by not stating it in the pre-trial compliance, but he took it up anyway. And that was fine. I'd done everything possible. When they objected to it, I tried to call that doctor right before the weekend. He's a great nephrologist in Chicago. And amazingly, he replied, sent me a letter saying he'd be in Chicago at his office practicing medicine and unavailable. I showed that to the other side, to Judge White, and he found him unavailable. And so both sides got a fair shake. But we think it would have been admissible without me even trying to do that, because Rule 32 doesn't require you to try to make them available. If they're 100 miles away or more and you don't procure their unavailability, then it's admissible. But I tried to do everything I could to get him there, and he simply couldn't get there. He wasn't under subpoena power, under 45C of our rules, because he's 100 miles away or more. He's actually, I did a search on Siri just to see, and it's 297 miles, according to Siri, if that's reliable. But he was, he satisfied that. The other thing, though, is that this is fair, because this expert, he was crossed for 60 pages, almost maybe longer than I directed him. And they did everything possible, asked every possible question they would have, and they didn't identify anything to the court that they would have done differently, just that they would have liked to have him live. But many experts and many witnesses testify by deposition, and that's entirely permissible in this circuit and around the country. Is this a witness you'd characterize as a fact expert or an opinion expert, or both? I would say he's, because he was a retained expert of the defendant, I'd say he was an expert because of his qualifications on nephrology, but he was also giving his version of the oath. I didn't retain him, so he wasn't really a retained expert. He'd be like a non-retained expert, Your Honor. The other thing I would like to point out is that if I could, if I could move to issue two for a minute, on the excessive force, the objection to the punitive damage instruction, we also filed a motion to strike, and we set out the reasons why pretty extensively. But briefly, Rule 50 of the Rules of Civil Procedure require you to make a judgment as a matter of law during trial at the close of plaintiff's evidence, or you waive it if you're objecting to the insufficiency of the evidence. And that's what they did here. They filed written motions for a directed verdict for judgment as a matter of law on defendants, but nothing on Mr. Moten, nor did they make an oral motion at the close of our evidence saying we submitted insufficient evidence. Then when it came time for the jury instruction conference on punitive damages, all they said was they thought it was improper. It was a generalized instruction that gave Judge White nothing to rule on. He had heard the evidence. He heard the evidence of the violence, the excessive force. The identification of Mr. Moten came from himself. He sat on the witness stand and said he struck him with the baton. Mr. Tomlinson, a co-defendant, also testified, an officer, that he saw Mr. Moten take the baton and strike him with it, and he did it. He said he struck him with it, but he didn't see where he hit him on the body. And then we had two doctors, Dr. Arkin live, Dr. Burns by deposition, and then a third one, the jail doctor, Dr. Geiger. They all found a lineal wound that was 12 inches long across his back. I'd never heard that term, and I asked what that was, and Dr. Arkin testified that's the type of wound that's made by getting hit with a steel baton, just like Mr. Moten must have hit him with. That was found by the jail Corizon expert, or treating doctor, right after he was put in the infirmary. There was no evidence it had occurred any time but the time that Mr. Moten was hitting him. So the jury had ample evidence, just like Judge White, to consider for punitive damages, and they actually, they admitted that the liability instruction on excessive force was proper. So most of these arguments that are being made now are made after the fact, after trial. When we submitted the verdict director for excessive force, they said no objection. They didn't object to the sufficiency of the evidence then, by a Rule 50 motion, or anything until later. And Judge White... Correctness or not of the statement of the law of punitive damages, not an objection to it being submitted because there was insufficient evidence. Isn't that right? Correct, Your Honor. And so at that point, later they raised it in a post-trial motion, motion for new trial, and they attempted to raise a Rule 50 motion for insufficient evidence, and Judge White struck it because it wasn't timely raised. The cases say that. And in this circuit, the Hyundai case was similar, where Judge Grunder wrote the opinion, and it states that if a court can even review a Rule 50 motion for lack of specificity, it's under a manifest injustice standard. And that's a very, very rare case, or rare situation. And the Eighth Circuit didn't review it in that case, but Judge Grunder raised that, saying if they can even review it, if it's not waived, it would be under manifest injustice. So we think, when all is said and done, Judge White ruled properly. He ruled properly on admitting the deposition. It was properly disclosed under the rules. They got to cross-examine him for 60 pages. We disclosed him the day before the deposition. They never asked to redepose him as plaintiff's expert. They never even retained their own expert. Then when we disclosed him in pretrial, they didn't object. They didn't say anything till the last minute. And I scrambled around, got the letter from the doctor who said he's unavailable, and I went to extra efforts to procure him, and he wasn't available. Could I ask you, in your limited time, just a question, and I apologize to interrupt, but regarding the reduction of the award in light of the settlement with Corizon, what is your view on how that was presented to the district court? Because it seems a little unclear whether it was properly presented and the district court failed to address it, or whether it really wasn't properly in front of the court. Yes, Judge Kelly. That argument, at the same time as this motion for reduction, we also had a pending application for attorney's fees. And the other side, the appellant, the defendant in the court below, had argued that those issues were separate and distinct. The jail defendant's claims were more like medical malpractice. The case against the officers was excessively forced like a tort, a bodily injury. They were separate and distinct, so the judge shouldn't award us any fees on our work for the settling defendants. And Judge White ruled that way. He said they were separate and distinct. They aren't like joint tort feasors. So he reduced our fees by 25% for that work, saying they're separate. Now, in the motion for reduction, they changed their position and said, these are the same issues and you ought to offset it. You ought to get evidence and reduce it. But that's totally improper. They already argued it away. And those are totally different claims. That was more like a med mal case, not a beating or excessive force case. So we think no reduction was required. But if he considered sending it back to do that, we would ask for an order to have Judge White reinstate or reevaluate our attorney's fees for the whole case to take into account the 20 to 25% reduction. Because if they are the same, then he could consider fees. But he denied our fees on that because they'd argued they were separate and distinct. Thank you, Your Honors. Thank you, Mr. Tatlow. Does Mr. Luebke have some time remaining? Time had expired, Your Honor. Mr. Luebke, if you heard something in the appellee's presentation that you feel the court needs to be corrected concerning, I'll give you a minute. One thing that I heard counsel say was that no courts in the Eighth Circuit had drawn any distinction between a fact witness and expert witness. That's incorrect. We've cited on page three of our reply brief a case, looks like out of Nebraska. Courts distinguish between unavailability of fact witness and expert witnesses. Parties are expected to use other reasonable means to procure the attendance of their expert because the parties select their experts and arrange for their appearance at trial. And this was the plaintiff's opportunity to produce a live testimony of a nephrologist. They failed to do so, and we think given the court's preference for live testimony, particularly with respect to experts who can be cross-examined in front of a jury where they can assess credibility based on the way they answer, their mannerisms, and under the case be reversed. And the final thing I want to point out was that with respect to attorney's fees, we didn't draw any distinction. The fees that they spend on one particular claim as to another doesn't go to the damages. Here the damages were the kidney damage that Dr. Burns testified to in his deposition, and the injury, I think, that the neurologist testified to. Those are the same injuries, whether they occurred by the police officers, whether they occurred by the Corizon doctors. That was the same injury. That's what the damages went to. To the extent that they received compensation for those damages from the other defendants, it should be reduced without regard to the attorney's fees. That's all I have, Your Honor. Thank you, Mr. Lupke. The court thanks both counsel for your presence and the argument you've provided to the court. The briefing that has been submitted will take the case under advisement.